IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

DIONKO HORTON                                                              PLAINTIFF

V.                                    CIVIL NO. 4:10-cv-04169

BOBBY SLIGER; SGT.
JEREMY BROWN; CPT.
JOHNNY GODBOLD; SHERIFF
JERRY CRANE; and
CHIEF JAMES SINGLETON                                                      DEFENDANTS

## REPORT AND RECOMMENDATION OF THE UNITED STATES MAGISTRATE JUDGE

This is a civil rights action filed by Plaintiff, Dionko Horton, pursuant to the provisions of 42 U.S.C. § 1983. Plaintiff proceeds *pro se* and *in forma pauperis*. Pursuant to the provisions of 28 U.S. C. § 636(b)(1) and (3)(2011), the Honorable Susan O. Hickey, United States District Judge, referred this case to the undersigned for the purpose of making a report and recommendation.

Currently before the Court is Defendants' Motion for Summary Judgment (ECF No. 28); Brief in Support of Motion for Summary Judgment (ECF No. 29); and Statement of Facts (ECF No. 30). Plaintiff filed a Response to the Motion For Summary Judgment utilizing a questionnaire from the Court. ECF No. 39. After careful consideration of the briefing, the undersigned makes the following Report and Recommendation.

## I.      BACKGROUND

The events that are the subject of this lawsuit occurred while Plaintiff was incarcerated in the Hempstead County Detention Center ("HCDC"). Plaintiff is no longer incarcerated. Plaintiff

filed the instant Complaint on November 29, 2010 (ECF No. 1) and a Supplement to Complaint on December 21, 2010 (ECF No. 7).  Plaintiff claims his constitutional rights were violated (1) on November 7, 2010 when he was forced to sleep and eat in his cell with feces and urine on the floors and walls (ECF No. 1, pp. 4-5); (2) when he was denied medical care after he became ill from the November 7, 2010 incident (ECF No. 1, p. 10; ECF No. 7, pp. 1-3); (3) on November 16, 2010, when Separate Defendants Sliger and Brown stripped searched Plaintiff because they were mad at him for putting in "some paper work on them" (ECF No. 7, p. 5); (4) on November 16, 2010 when Separate Defendant Sliger targeted, and attempted to provoke Plaintiff by pushing him two times (ECF No. 7, pp. 6-7); (5) when Separate Defendant Godbolt allowed the unsanitary conditions regarding his drinking cup (ECF No. 7, p.9-10); and (6) when Separate Defendant Godbolt violated his due process rights with twenty-three-hour lock down (ECF No. 7, p. 9). Plaintiff has brought this action against Defendants in both their official and individual capacities.

Regarding his first conditions of confinement claim, Plaintiff specifically alleges: (1) on November 7, 2010, Separate Defendants Brown and Sliger turned the water off in his cell;  (2) Plaintiff remained in the cell from 6:20 p.m. to 9:00 a.m; (3) with no water;  (4) with feces and urine in the toilet and on the floor; (5) Separate Defendants Brown and Sliger would not move Plaintiff to a clean cell; (6) forced him to eat dinner and breakfast inside his cell; and (7) refused him cleaning supplies.  ECF No. 1, pp. 4-6.

Relating to his denial of medical care claim, Plaintiff specifically alleges the feces and urine in his cell on November 7, 2010 gave him a stomach and head ache.  ECF No. 1, p. 10.  In his

Supplement,[1] Plaintiff claims he requested a trip to the hospital but Separate Defendant Godbolt declined to take him because the nurse did not indicate a trip to the hospital was necessary.  ECF No. 7, pp. 1-3.

In support of his retaliation claim, Plaintiff specifically alleges that Separate Defendants Sliger and Brown strip searched him, on November 16, 2010, because they were mad at him for "putt[ing] some paper work on them."  ECF No. 7, p. 5; ECF No. 39, p. 3.  Additionally, Separate Defendants Sliger and Brown targeted and harassed Plaintiff because he "wrote them up" regarding the November 7, 2010 incident.  ECF No. 7, p. 6.  Also regarding his retaliation claim, Separate Defendant Sliger pushed him two or three times and attempted to provoke Plaintiff into hitting one of the officers.  ECF No. 7, p. 7.  Plaintiff also claims Separate Defendant Godbolt is not responding to his grievances regarding the November 7, 2010 incident, and is allowing Separate Defendants Brown and Sliger to target Plaintiff.  ECF No. 7, p. 8.

Regarding his due process claim, Plaintiff specifically alleges he was locked down twenty-three hours a day for no reason.  ECF No. 7, p. 9.

Finally, relating to his second conditions of confinement claim, Plaintiff alleges from September 27, 2010 through December 8, 2010 his drinking cup was only washed once and an inmate with HIV has the same style cup as Plaintiff.  ECF No. 7, p. 10.

## II.    LEGAL STANDARD

The Court "shall grant summary judgment if the movant shows that there is no genuine

---

[1]In his Supplement, Plaintiff does not make any additional allegations through express statements but he did submit several grievance forms and requests he sent while at HCDC.  ECF No. 7.  The Court construes the Supplement to allege the facts listed within the grievances and requests as part of Plaintiff's Complaint.  *See Lomholt v. Holder*, 287 F.3d 683, 684 (8th Cir. 2002) (*pro se* pleadings should be liberally construed and held to less stringent standards when facing a motion for summary judgment).

dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[A] genuine issue of material fact exists if: (1) there is a dispute of fact; (2) the disputed fact is material to the outcome of the case; and (3) the dispute is genuine, that is, a reasonable jury could return a verdict for either party." *RSBI Aerospace, Inc. v. Affiliated FM Ins. Co.,* 49 F.3d 399, 401 (8th Cir. 1995). The moving party has the burden of showing the absence of a genuine issue of material fact and that they are entitled to judgment as a matter of law, but the nonmoving party may not rest upon mere denials or allegations in the pleadings and must set forth specific facts to raise a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256 (1986); *Celotex Corp. v. Catrett,* 477 U.S. 317, 324 (1986). The Court must view all evidence and inferences in a light most favorable to the nonmoving party. *See McCleary v. ReliaStar Life Ins. Co.,* 682 F.3d 1116, 1119 (8th Cir. 2012). However, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris,* 550 U.S. 372, 380 (2007).

## III.   DISCUSSION

In their Motion for Summary Judgment and Brief in Support, Defendants argue: (1) Plaintiff failed to allege a custom or policy of Hempstead County which resulted in a violation of his constitutional rights; (2) Plaintiff failed to allege factual allegations against Separate Defendants Godbolt, Crane, and Singleton; (3) the conditions of Plaintiff's confinement did not amount to cruel and unusual punishment under the Eighth Amendment; (4) Plaintiff was not strip searched, but even if he was, probable cause existed for the search, therefore, it did not violate the Fourth Amendment; (5) Plaintiff was not subjected to excessive force by Separate Defendant Sliger on November 16,

2010; and (6) Plaintiff's constitutional rights were not violated by the twenty-three-hour lock down.

As an initial matter, the Court notes it will not address Plaintiff's denial of medical care claim, retaliation claim, or conditions of confinement claim regarding his drinking cup in this Report and Recommendation as Defendants did not move for summary judgment on these claims.[2]

### A.    Official and individual capacity claims

Defendants argue Plaintiff failed to state a policy or custom of Hempstead County violated his constitutional rights.

Under Section 1983, a defendant may be sued in either his individual capacity, or in his official capacity, or in both.  In *Gorman v. Bartch,* the Eighth Circuit Court of Appeals ("Eighth Circuit") discussed the distinction between individual and official capacity suits.  As explained by the *Gorman* case:

> Claims against government actors in their individual capacities differ from those in
> their official capacities as to the type of conduct that is actionable and as to the type
> of defense that is available.  *See Hafer v. Melo,* 502 U.S. 21, 112 S.Ct. 358, 116
> L.Ed.2d 301 (1991).  Claims against individuals in their official capacities are
> equivalent to claims against the entity for which they work; they require proof that
> a policy or custom of the entity violated the plaintiff's rights, and the only type of
> immunity available is one belonging to the entity itself.  *Id.* 502 U.S. at 24–27, 112

---

[2]Plaintiff attached grievances regarding his denial of medical care claim to his Complaint and Supplement (ECF No. 1, p. 10; ECF No. 7, pp. 1-3) and then clarified the claim in his Response when he stated Separate Defendant Godbolt denied him medical care (ECF No. 39, p. 7).  The Court construes this as a denial of medical care claim.  *See Lomholt v. Holder*, 287 F.3d 683, 684 (8th Cir. 2002) (*pro se* pleadings should be liberally construed and held to less stringent standards when facing a motion for summary judgment).  Plaintiff also claimed Separate Defendants Sliger and Brown targeted him because they were mad about Plaintiff filing "paper work" against them (ECF No. 7, p. 5) and also that officers were "harassing" him because they new he was going to "write them up" (ECF No. 7, p. 6).  In his Response, Plaintiff stated: "I was targeted because of the complaints I filed on the officers."  ECF No. 39, p. 8.  The Court construes all of these allegations in totality as a retaliation claim.  *See Lomholt*, 287 F.3d at 684.  Finally, in his Supplement, Plaintiff claims his drinking cup was only washed once in seventy-one (71) days and an inmate with HIV had the same style cup as Plaintiff.  ECF No. 7, p. 10. The Court construes these statements as an additional conditions of confinement claim.  *See Lomholt*, 287 F.3d at 684.

S.Ct. at 361–62 (1991).  Personal capacity claims, on the other hand, are those which allege personal liability for individual actions by officials in the course of their duties; these claims do not require proof of any policy and qualified immunity may be raised as a defense.  *Id.* 502 U.S. at 25–27, 112 S.Ct. at 362.

*Gorman,* 152 F.3d 907, 914 (8th Cir.1998).  In his Complaint and Supplement, Plaintiff failed to allege any policy or custom of Hempstead County that caused his constitutional rights to be violated. In his Response, Plaintiff enumerated the policies and/or customs of Hempstead County that he believes violated his constitutional rights:

> I was forced to eat [and] sleep in inhumane conditions which was a hazard to my health. My handcuffs were removed outside of my cell to provoke me to fight back when the officers provoked me; which is against HCDC policy handbook.  My drinking cup was not collected nor washed according to HCDC policy handbook.  I was put on 23 hour lockdown without any rules being violated.  According to HCDC handbook, a rule or policy must be violated to be placed on 23 hour lockdown.

ECF No. 39, p. 9 (errors in original).  This statement fails to state a policy or custom of Hempstead County that caused Plaintiff's constitutional rights to be violated.  "[R]igorous standards of culpability and causation must be applied to ensure that the [county] is not held liable solely for the actions of its employee" in cases where a plaintiff claims a county has caused an employee to violate the plaintiff's constitutional rights.  *Board of County Commissioners, Oklahoma v. Brown,* 520 U.S. 397, 405 (1997).  There is no summary judgment evidence in the record to support an official capacity claim against any of the Defendants.  Plaintiff plainly states in his Response that Defendants' actions were in violation of HCDC policy rather than arguing their actions were in compliance with an unconstitutional policy or custom of Hempstead County.  ECF No. 39, p. 9.  Further, a claim of deprivation of a constitutional right cannot be based on a *respondeat superior* theory of liability.  *See Monell v. Department of Social Services,* 436 U.S. 654, 694 (1978).  In other words, Hempstead County cannot be held liable based merely on the fact it employs

Defendants.  Therefore, Plaintiff's official capacity claims must fail as a matter of law.

Defendants also argue Plaintiff has failed to allege individual capacity claims against Separate Defendants Godbolt, Crane, and Singleton.

The only allegations Plaintiff asserts against Separate Defendant Crane is that he did not "look into" any of Plaintiff's complaints or reprimand any of his officers for their wrongdoing. ECF No. 39, p. 8.  Plaintiff's only allegation against Separate Defendant Sheriff Singleton is that the Sheriff did not reply to Plaintiff's written complaints and "[a]llowed inhumane treatment to continue."  ECF No. 39, p. 8.  A claim  of deprivation of a constitutional right cannot be based on a *respondeat superior* theory of liability.  *See Monell,* 436 U.S. at 694.  "[A] supervisor is not vicariously liable under 42 U.S.C. § 1983 for an employee's unconstitutional activity."  *White v. Holmes,*  21 F.3d 277, 280 (8th Cir. 1994); *see also Keeper v. King*, 130 F.3d 1309, 1314 (8th Cir. 1997) ("general responsibility for supervising the operations of a prison is insufficient to establish the personal involvement required to support liability").  In other words, Separate Defendants Crane and Sheriff Singleton cannot be held liable merely because they supervises the individuals allegedly responsible for violating Plaintiff's constitutional rights.  *Id.; see also Mark v. Nix,* 983 F.2d 138, 139–40 (8th Cir. 1993) (Section 1983 liability requires some personal involvement or responsibility).  There are no allegations or facts on the record that show Separate Defendants Crane or Sheriff Singleton were personally involved in any way in the events complained of by Plaintiff.  Plaintiff bases his claims against Separate Defendants Crane and Sheriff Singleton solely on their supervisory roles at the HCDC and in Hempstead County.  This is insufficient to state a claim under section 1983.  Therefore, Plaintiff's individual capacity claims against Separate Defendants Crane and Sheriff Singleton must fail as a matter of law.

-7-

Plaintiff did, however, allege specific facts and allegations against Separate Defendant Godbolt including denial of medical care, retaliation, and unsanitary conditions relating to his drinking cup.

### B.    Conditions of confinement regarding the November 7, 2010 incident

Plaintiff claims he was left in a cell with urine and feces on the floor and wall and with the water turned off for approximately fifteen hours on November 7, 2010.  The Court notes Plaintiff does not allege he was denied drinking water, only that the water to the toilet was turned off. Defendants argue the conditions of Plaintiff's cell on November 7, 2010 were the result of Plaintiff purposely stopping up his toilet.  Further, Plaintiff was offered, but refused, cleaning supplies to remedy the situation.  Lastly, even if Plaintiff's allegations are true, he was not housed in the conditions alleged long enough to violate his constitutional rights.

"[W]hen the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being." *County of Sacramento v. Lewis*, 523 U.S. 833, 851 (1998)(citation omitted). The Constitution does not mandate comfortable prisons, but neither does it permit inhumane ones. *See Farmer v. Brennan*, 511 U.S. 825, 832 (1994).

It is unclear from the record whether Plaintiff was a pretrial detainee or convicted inmate on November 7, 2010.  The Eighth Circuit, however, applies the same deliberate indifference standard in either situation.  *See Butler v. Fletcher*, 465 F.3d 340, 345 (8th Cir. 2006)(deliberate indifference standard of the Eighth Amendment applies to claims, brought by pretrial detainees and convicted inmates, that prison officials failed to provide adequate food, clothing, shelter, etc.). The Eighth Amendment to the United States Constitution prohibits the imposition of cruel and unusual

punishment.  U.S. Const. amend. VIII.   The Cruel and Unusual Punishment Clause of the Eighth Amendment forbids conditions that involve the "wanton and unnecessary infliction of pain," or are "grossly disproportionate to the severity of the crime."  *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981).

A prisoner alleging an Eighth Amendment violation must prove both an objective and subjective element.  *See Revels v. Vincenz*, 382 F.3d 870, 875 (8th Cir. 2004)(*citing Wilson v. Seiter*, 501 U.S. 294, 298 (1991)).  "The defendant's conduct must objectively rise to the level of a constitutional violation by depriving the plaintiff of the minimal civilized measure of life's necessities.  The defendant's conduct must also reflect a subjective state of mind evincing deliberate indifference to the health or safety of the prisoner"  *Revels*, 382 F.3d at 875 (citations and internal quotation marks omitted).  Deliberate indifference is established when the Plaintiff shows "the defendant was substantially aware of but disregarded an excessive risk to inmate health or safety."  *Revels,* 382 F.3d at 875.  The standards against which a court measures prison conditions are "the evolving standards of decency that mark the progress of a maturing society."  *Estelle v. Gamble*, 429 U.S. 97, 102 (1976).

The material facts surrounding the November 7, 2010 incident are undisputed—Plaintiff spent approximately fifteen hours in his cell without a working toilet and feces and urine on the floor.

The length of time Plaintiff was subjected to the harsh conditions is a critical factor in analyzing whether his constitutional rights were violated.  *See Smith v. Copeland,* 87 F.3d 265, 269 (8th Cir. 1996).  "Conditions, such as a filthy cell, may 'be tolerable for a few days and intolerably cruel for weeks or months.'"  *Howard v. Adkison,* 887 F.2d 134, 137 (8th Cir. 1989) (quoting *Hutto*

*v. Finney,* 437 U.S. 678, 687 (1978)).  Here, the fifteen hours Plaintiff spent in his cell with feces

and urine on the floor and no working toilet does not rise to the level of a constitutional violation by

depriving Plaintiff of the minimal civilized measure of life's necessities.  *See e.g.,  Smith,* 87 F.3d

at 268 (no constitutional violation when an inmate spent four days in a cell with an overflowing toilet

smelling the stench of his own feces and urine); *Williams v. Delo,* 49 F.3d 442, 445 (8th Cir. 1995)

(four days in a strip cell with no clothes and the water to the toilet and sink shut off did not deny the

inmate the minimal civilized measure of life's necessities); *contra Owens v. Scott County Jail,* 328

F.3d 1026, 1027 (8th Cir 2003) (inmate forced to sleep next to a toilet and have urine splashed on

him while he slept for approximately five weeks did state a conditions of confinement claim

sufficient to survive summary judgment); *Howard v. Adkison,* 887 F.2d 134 (8th Cir. 1989) (inmate

living in a cell covered in filth and human waste for two years does violate the constitution).  The

conditions Plaintiff alleged here do not rise to the level required to violate the Eighth Amendment,

therefore, his claim must fail as a matter of law.

### C.    Strip search

Plaintiff claims he was strip searched on November 16, 2010 by Separate Defendants Sliger

and Brown because they were mad at him for filing grievances against them.  ECF No. 7, p. 5; ECF

No. 39, p. 3.  Defendants argue Plaintiff was not stripped searched, but even if he was, Separate

Defendants Sliger and Brown had probable cause to do so.[3]

The Fourth Amendment prohibits unreasonable searches.  *Goff v. Nix,* 803 F.2d 358, 363 (8th

Cir. 1986).  To determine whether a search is unreasonable the Court must balance the "need for the

---

[3]The Court again notes that the retaliation component of this claim was not addressed in
Defendants Motion for Summary Judgment and therefore, the Court will not address it here.

particular search against the invasion of personal rights that the search entails." *Bell v. Wolfish,* 441 U.S. 520, 559 (1979).  In the context of a strip search conducted in a detention center, the Court must consider (1) the scope of the particular intrusion; (2) the manner in which the search is conducted; (3) the justification for initiating the search; and (4) the place where the search is conducted.  *Id.*  In *Bell*, the Supreme Court noted "[a] detention facility is a unique place fraught with serious security dangers."  *Bell v. Wolfish,* 441 U.S. 520, 559 (1979) (holding visual body cavity searches of inmates after every contact visit did not violate the Fourth Amendment).

The material facts of the purported strip search are in dispute.  Specifically, the parties dispute whether Plaintiff's clothes were removed (ECF No. 36, pp. 4-5); whether Plaintiff was acting suspiciously prior to the search (ECF No. 39, pp. 3-4); and whether Separate Defendants Sliger and Brown initiated the search as retaliation for Plaintiff filing grievances against them (ECF No. 7, p. 5; ECF No. 39, p. 3).  Finally, while it is undisputed that the search occurred as Plaintiff was leaving vitiation, Plaintiff claims the visitation was not a contact visit and he was fully supervised throughout the visit.  ECF No. 39, p. 3.  The Court finds there are genuine issues of material fact as to Plaintiff's strip search claim, and therefore, the Court is unable to make a determination on the constitutionality of the search based on the record before it.

### D.   **Excessive Force**

Defendants construe Plaintiff's allegation that Separate Defendant Sliger pushed him two or three times in an attempt to provoke Plaintiff into hitting him as an excessive force claim, and moved for summary judgment on the basis that Plaintiff has failed to state a claim for excessive force.  The Court, however, does not construe this allegation against Separate Defendant Sliger as a separate and independent claim for excessive force.  Instead, this allegation seem to be part and

parcel of Plaintiff's retaliation claim.  In Plaintiff's Supplement he makes the shoving allegation against Separate Defendant Sliger in a grievance to Separate Defendant Godbolt.  The subject of that grievance covers many actions of Separate Defendants Sliger and Brown that Plaintiff characterizes as targeting, harassing, and wrongdoing as a result of Plaintiff filing grievances over the November 7, 2010 incident.  *See* ECF No. 7, pp. 6-7.  Because the Court finds Plaintiff has not made an excessive force claim against Separate Defendant Sliger, it is unnecessary to address Defendants' arguments against such a claim here.

### E.      Twenty-three-hour lock down

Plaintiff claims his due process rights were violated when he was locked down twenty-three hours a day without cause.  Defendants allege that Plaintiff was not locked down on punitive status, and all inmates in the HCDC, at the time in issue, were locked down twenty-three hours a day due to security concerns.  ECF No. 29-2.

Again, the Court notes it is unclear from the record whether Plaintiff was a pretrial detainee or convicted prisoner at the time in issue here.  For this reason, the Court will analyze Plaintiff's due process claim under the standard applicable to pretrial detainees as it is more favorable to Plaintiff.

The law is clear that a pretrial detainee cannot be punished.  *See Bell v. Wolfish,* 441 U.S. 520, 535 (1979).  "However, not every disability imposed during pretrial detention amounts to punishment in the constitutional sense." *Smith v. Copeland,* 87 F.3d 265, 268 (8th Cir. 1996) (internal quotations omitted).  "Once the Government has exercised its conceded authority to detain a person pending trial, it obviously is entitled to employ devices that are calculated to effectuate this detention." *Bell,* 441 U.S. at 537.  When determining whether a particular restriction or condition is considered punishment, the Court should consider whether the restriction or condition is

reasonably related to a legitimate governmental objective. *Martinez v. Turner*, 977 F.2d 421, 423 (8th Cir. 1992). *See also Bell,* 441 U.S. at 539 ("if a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to punishment."). The government has a legitimate interests in managing detention facilities. *Smith,* 87 F.3d at 268. The government also has a legitimate interest in maintaining security in detention facilities. *Bell*, 441 U.S. at 546-7. Furthermore, the Court is not concerned with *de minimis* levels of imposition on inmates. *Id.* The Supreme Court instructs the Court to be mindful that these type of inquires "spring from constitutional requirements and that judicial answers to them must reflect that fact rather than a court's idea of how best to operate a detention facility." *Bell*, 441 U.S. at 539.

It is undisputed that all inmates at the HCDC were under twenty-three-hour lock down while Plaintiff was incarcerated, there and this lock down was for security purposes not punitive reasons. ECF No. 29-2, p. 1; ECF No. 39, p. 6. Maintaining security of a detention facility is a legitimate governmental interest. *Smith,* 87 F.3d at 268. Therefore, the Court should defer to the decisions of the officials at the HCDC in determining the lock down of Plaintiff as necessary to maintain the security of the HCDC. *See Bell,* 441 U.S. at 540-41, n. 23. Accordingly, there are no genuine issues of material fact as to whether Plaintiff's twenty-three-hour lock down violated his due process rights, and this claim fails as a matter of law.

To the extent Plaintiff alleges the conditions of his confinement in twenty-three hour lock down violated his constitutional rights, the Court finds no genuine issue of material fact. In *Campbell v. Cauthron,* the Eighth Circuit established that inmates confined to their cells for more than sixteen hours a day must be given the opportunity to exercise for one hour each day. 623 F.2d

-13-

503, 507 (8th Cir.1980).  Additionally, *Campbell* also established that an inmate held for over a week must be provided at least 43.3 square feet of space in his cell.  *Id.*; *see also Hall v. Dalton*, 34 F.3d 648, 650 (8th Cir. 1994).

It is undisputed that Plaintiff was allowed one hour out in the day room each day, one hour of outdoor recreation per week, and Plaintiff had more than 43.3 square feet of living space in his cell.  ECF No. 39, p. 6.  Therefore, pursuant to *Campbell*, the conditions of confinement do not rise to the level of a constitutional violation, and there are no genuine issues of material fact as to Plaintiff's conditions of confinement claim relating to his twenty-three-hour lock down.

## IV.  CONCLUSION

For the reasons stated, I recommend that Defendants' Motion for Summary Judgment (ECF No. 28) be **GRANTED** in part and **DENIED** in part.  Specifically, I recommend Plaintiff's (1) official capacity claims against all Separate Defendants; (2) individual capacity claims against Separate Defendants Crane and Sheriff Singleton; (3) conditions of confinement claim regarding the November 7, 2010 incident; and (4) due process claim and conditions of confinement claim regarding twenty-three-hour lock down all be dismissed with prejudice and Separate Defendants Crane and Sheriff Singleton be dismissed from this action.  This leaves for later resolution Plaintiff's (1) denial of medical care claim; (2) strip search claim; (3) retaliation claim; and (4) conditions of confinement claim regarding the drinking cup against Separate Defendants Godbolt, Sliger, and Brown in their individual capacities.

**The parties have fourteen days from receipt of the Report and Recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1).  The failure to file timely objections may result in waiver of the right to appeal questions of fact.  The parties are**

reminded that objections must be both timely and specific to trigger de novo review by the

district court.

   **DATED** this **27th day of February 2013.**

                                        /s/ Barry A. Bryant
                                        HON. BARRY A. BRYANT
                                        UNITED STATES MAGISTRATE JUDGE